Whaley, Chief Justice,
delivered the opinion of the court:
The plaintiffs are oyster growers in and near Onset Bay in the town of Wareham in the State of Massachusetts, and held licenses to plant, grow, and dig oysters in certain lots. The individual plaintiffs held their licenses for the use and benefit of the Schroeder Besse Oyster Company, Inc. They claim no separate interest.
Under the River and Harbor Act of 1935, act of August 30, 1935, 49 Stat. 1028, 1029, the Government undertook the improvement of Cape Cod Canal as set out in the act, and Rivers and Harbors Committee Document No. 15, 74th Congress, 1st Session, and commenced dredging operations on that project in the year 1936 and continued throughout the years 1937 and 1938. In conducting these operations the defendant used several types of dredges. At times the hydraulic pipe-line dredge, the dipper dredge, the seagoing hopper dredge, and the clamshell dredge were used. Some of these dredges were used at the same time and others from time to time. There was no continuous operation in any definite line or section of the canal. The dredges were moved from place to place and from one direction to another, and were operated from time to time. The operation of these dredges on this project caused much silt to be deposited on plaintiff’s oyster grounds and seed-catching bars which resulted in damage to plaintiff’s oyster grounds, oysters, and seed-catching operations.
The oyster grounds involved in this case were lots of land for the most part lying in the shallow waters of Onset Bay, Massachusetts, and licensed to plaintiff by the town of Wareham, by the authority of the Commonwealth of Massachusetts.
There was no advance notice given to plaintiff of the dredging on the Cape Cod Canal other than the general notice to the public in the passage of the River and Harbor Act of 1935. No written notice was served on it.
In the River and Harbor Act of 1935, supra, providing for this project there is inserted section 13, which reads as follows:
*738 That the Court of Claims shall have jurisdiction to hear and determine claims for damages to oyster growers upon private or leased lands or bottoms arising from dredging operations and use of other machinery and equipment in making such improvements: Provided, That suits shall be instituted within one year after such operations shall have terminated.
Under the terms of this act the Government has not only given plaintiff the right to sue for damages but it admits its liability for all damages resulting to oyster growers from “dredging operations and use of other machinery and equipment” for making such improvements.
It is not necessary under the terms of this act to prove negligence in the operation of any instrumentality of the Government but simply to show by the preponderance of the evidence that the plaintiff was an oyster grower who was damaged as a result of dredging operations and the use of machinery and equipment in making the improvements.
This case is in line with the decision of this court in Radel Oyster Company v. United States, 78 C. Cls. 816, in which the Government admitted liability for the tort.
In the instant case no negligence ha,s to be proved but only that damages have been sustained by the use of these instrumentalities of the Government and by the dredging operations.
The instant case is different from the Mansfield case, 94 C. Cls. 397, which was under a special jurisdictional act and required that negligence be proved.
In the trial of this case the defendant has introduced no witnesses. One of the defendant’s engineers testified as a witness for the plaintiff. No other engineer engaged in the operation testified for either party and no attempt has been made by the defendant to contradict the evidence of plaintiff as to the amount of loss sustained.
The commissioner has found in a careful examination of the evidence and the court has adopted and confirmed his finding that, due to the dredging operations, certain lots (Finding 4) totaling 27.3 acres were permanently destroyed for the propagation and growing of oysters and the licenses for their use in planting, growing, and digging *739 oysters have become valueless. The total damage to the plaintiff for this acreage is $1,911.00. Plaintiff is entitled to recover on this item.
On certain other lots, set out in Finding 5, mnd and silt deposits caused by defendant’s dredging operations destroyed certain mature oysters which had been planted by the plaintiff on its oyster beds. The loss sustained by plaintiff due to the destruction of these mature oysters totals $4,852.96. Plaintiff is entitled to recover on this item.
In addition to the lots above mentioned, there were two lots, No. 17 and No. 18, on which oysters had been planted and upon which mud and silt were deposited by defendant’s operations. Plaintiff attempted to salvage these beds but, owing to the muddy condition of the beds and the heavy proportion of dead oysters which were brought to the surface, it was determined that further salvage operations were futile. Plaintiff lost on these two beds a total of 2,632 bushels of oysters which had a reasonable market value of $6,132.56. Plaintiff is entitled to recover on this item.
Plaintiff planted 9,100 bushels of shells on five lots for the purpose of catching sets of young oysters. The object and aim of plaintiff in setting out these shells was for the purpose of having spawn attach themselves to the shells and become young seed oysters and in this way reclaim certain beds. This method was in conformity with the custom of oyster growers in the general conduct of their business of growing oysters. These operations were in the nature of tests and experiments and were fully justified Under the circumstances. However, due to the mud and silt stirred up by the dredges and carried a long distance by the current, the spawn were destroyed with the result that there were no adhesions to the shells and there was a total loss. In 1937 plaintiff repeated these operations and this time planted 8,075 bushels of shells with the same purpose and object in view. Claim is made that, had plaintiff been successful in obtaining the usual number of young sets on these shells, their value would have been $.50 a bushel.
There is no question that the plaintiff was justified in attempting to conduct its business in the usual maimer for *740 propagating oysters for tbe coming season by depositing shells on the seed-catching bars and is entitled to whatever damage it sustained by reason of the outlay to which it was put. In other words, plaintiff is entitled to recover the value of the oyster shells and the cost of labor in depositing them upon the beds.
Both these operations, in 1936 and 1937, were tests and experiments in attempting to reclaim oyster beds which plaintiff knew had been affected by the dredging operations. Particularly is this true in the operations during 1937. Plaintiff had reasonable cause to believe that these dredging operations would continue and from its experience knew that the dredging operations were causing mud and silt to be carried in the currents to all parts of the beds and that there was no way of definitely knowing at which point this mud and silt would settle. As a business company attempting to continue its business as in former years, during adverse conditions, and in attempting to minimize its damage, plaintiff was justified in planting the shells in the hope of favorable results, and is entitled to. recover a reasonable value for the shells and the cost of depositing them on the beds.
We are unable to find from the record, however, that, as a matter of fact, the results would have been favorable, that is to say, that plaintiff- would with certainty, in the absence of a deposit of silt, have obtained a harvest of seed oysters in whole or in part. To allow the value of seed oysters, which might have grown on these shells, is to allow speculative damages. No speculative damages are allowable under the terms of the act. It is only for actual damage sustained by the oyster growers on account of dredging operations that plaintiff can recover. Plaintiff is entitled to recover $1,717.50 on this item.
Plaintiff is entitled to recover and judgment is rendered in favor of the plaintiff in the amount of $14,614.02. It is so ordered.
Madden, Judge; Jones, Judge; Whitaker, Judge; and Littleton, Judge, concur.